UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

PAMELA REILLY, as personal
representative of the Estate of Rosemarie
Reilly,

      Plaintiff,

v.

OTTAWA COUNTY, a municipal
corporation; DEPUTY ERIC TUBERGEN, in
his individual capacity; SERGEANT CHRIS
DILL, in his individual capacity; POLICE
OFFICER COLLIN WALLCE, in his
individual capacity; SERGEANT DENNIS
LUCE, in his individual capacity; CAPTAIN
BRANDON DEHAAN, in his individual
capacity; and SEAN KELLEY, in his
individual capacity

      Defendants.

Case No. 1:18-cv-1149
Honorable Janet T. Neff
Magistrate Ellen S. Carmody

**OTTAWA COUNTY DEFENDANTS,
INCLUDING THE COUNTY, DEPUTY
TUBERGEN, and SERGEANTS DILL
AND LUCE'S, ANSWER TO FIRST
AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND
JURDY DEMAND**

| | |
|---|---|
| James B. Rasor (P43476) | Douglas W. Van Essen (P33169) |
| Andrew J. Laurila (P78880) | Lee T. Silver (P36905) |
| RASOR LAW FIRM, PLLC | Michael L. Gutierrez (P79440) |
| Attorneys for Plaintiff | SILVER & VAN ESSEN, P.C. |
| 201 East 4th Street | Attorneys for Defendants Ottawa County, |
| Royal Oak, MI 48067 |   Tubergen, Dill, and Luce |
| (248) 543-9000 | 300 Ottawa Avenue, NW, Suite 620 |
| jbr@rasorlawfirm.com | Grand Rapids, MI 49503 |
| ajl@rasorlawfirm.com | (616) 988-5600 |
| | dwv@silvervanessen.com |
| | ltsilver@silvervanessen.com |
| | mgutierrez@silvervanessen.com |

Defendants OTTAWA COUNTY, OTTAWA COUNTY SHERIFF'S DEPUTY ERIC

TUBERGEN, OTTAWA COUNTY SHERIFF'S SERGEANT CHRIS DILL, and OTTAWA

COUNTY SHERIFF'S SERGEANT DENNIS LUCE ("Ottawa County Defendants"), by and

through their attorneys aforesaid, answer the First Amended Complaint and Jury Demand against

the Ottawa County Defendants and assert the following affirmative defenses:

## JURISDICITON AND VENUE

1.      This cause of action is brought pursuant to 42 U.S.C. § 1983, as well as the Fourteenth Amendment to the United States Constitution, and pendant claims arising under the laws of the State of Michigan.

**ANSWER:    The Ottawa County Defendants neither admit nor deny the allegations of this**

**paragraph because they are legal conclusions to which no responsive pleading is required.**

2.      This Court has jurisdiction over the claims arising under federal law pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

**ANSWER:    The Ottawa County Defendants neither admit nor deny the allegations of this**

**paragraph because they are legal conclusions to which no responsive pleading is required.**

3.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arose within the Western District of Michigan.

**ANSWER:    The Ottawa County Defendants neither admit nor deny the allegations of this**

**paragraph because they are legal conclusions to which no responsive pleading is required.**

## PARTIES

4.      Plaintiff, Pamela Reilly, is, and was at all times relevant hereto, a citizen of the United States and a resident of the City of New Baltimore, County of Macomb, State of Michigan.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of**

**information regarding the allegations.**

5.      Plaintiff is the mother and duly appointed Personal Representative of Rosemarie Reilly, deceased, and brings suit in her representative capacity as the Personal Representative of the estate.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of**

**information regarding the allegations.**

6.      Rosemarie Reilly was at all times relevant hereto a citizen of the United States.

**ANSWER:     The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

7.      Defendant Ottawa County was at all times relevant hereto, a body politic and Municipal corporation organized under the laws of the State of Michigan and is responsible for the operation of the Ottawa County Sheriff's Department (herein "OCSD").

**ANSWER:     The Ottawa County Defendants admit that Ottawa County is a municipal corporation organized under the laws of the state of Michigan.  The Ottawa County Defendants neither admit nor deny the allegations of this paragraph because they are legal conclusions to which no responsive pleading is required.**

8.      At all times material and relevant hereto, Defendant Eric Tubergen was an officer of the Ottawa County Sheriff's Department and was acting under the color of state law and in the course and scope of his employment.  He is sued in his in his [*sic*] individual capacity.

**ANSWER:     The Ottawa County Defendants admit that Defendant Eric Tubergen is a deputized member of the Ottawa County Sheriff's Department.  The Ottawa County Defendants neither admit nor deny the allegations of this paragraph because they are legal conclusions to which no responsive pleading is required.**

9.      At all times material and relevant hereto, Defendant Chris Dill was a Sergeant for the Ottawa County Sheriff's Department and was acting under the color of state law and in the course and scope of his employment.  He is sued in his individual capacity.

**ANSWER:     The Ottawa County Defendants admit that Defendant Chris Dill is a deputized member and sergeant of the Ottawa County Sheriff's Department.  The Ottawa County Defendants neither admit nor deny the allegations of this paragraph because they are legal conclusions to which no responsive pleading is required.**

10.     At all times material and relevant hereto, Defendant Collin Wallace was a police officer for the Grand Valley State Police Department and was acting under the color of state law and in the course and scope of his employment.  He is sued in his individual capacity.

**ANSWER:**    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.

11.    At all times material and relevant hereto, Defendant Brandon DeHaan was a Captain for the Grand Valley State Police Department and was acting under the color of state law and in the course and scope of his employment.  He is sued in his individual capacity.

**ANSWER:**    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.

12.    At all times material and relevant hereto, Defendant Dennis Luce was a Sergeant for the Ottawa County Sheriff's Department and was acting under the color of state law and in the course and scope of his employment.  He is sued in his individual capacity.

**ANSWER:**    The Ottawa County Defendants admit that Defendant Dennis Luce is a deputized member and sergeant of the Ottawa County Sheriff's Department.  The Ottawa County Defendants neither admit nor deny the allegations of this paragraph because they are legal conclusions to which no responsive pleading is required.

13.    At all times material and relevant hereto, Defendant Sean Kelley was an officer for the Bloomfield Township Police Department and the father of Jeremy Kelley.  He is sued in his individual capacity.

**ANSWER:**    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.

## COMMON FACTUAL ALLEGATIONS

14.    Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 13, as if fully set forth herein.

**ANSWER:**    The Ottawa County Defendants reallege and reassert as if fully set forth herein their allegations to paragraphs 1 through 13 of the First Amended Complaint as if fully set forth herein.

4

15.    Plaintiff, Pamela Reilly ("Pam"), is the mother of decedent Rosemarie Reilly.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

16.    Rosemarie was shot and killed at approximately 3:00 a.m. on November 6, 2016 by her ex-boyfriend, Jeremy Kelley (herein "Jeremy").

**ANSWER:    Admitted.**

17.    Rosemarie and Jeremy were in a romantic relationship while Rosemarie attended college at Grand Valley State University.

**ANSWER:    Admitted.**

18.    Upon information and belief, Rosemarie and Jeremy's relationship ended on or about the second week in September of 2016.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

19.    On or about October 1, 2016, Rosemarie spoke to her mother and explained that she and Jeremy were still living together, which caused her significant problems, and discussed her desire to move out of the residence that she and Jeremy shared.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

20.    On or about October 5, 2016, Jeremy was admitted to the Holland Hospital after attempting to commit suicide, telling Rosemarie that he had a gun to his head and was going to shoot himself.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

21.    Upon information and belief, Rosemarie was unable to locate Jeremy when he threatened suicide on October 5, but was able to speak to Jeremy's father, Defendant Sean Kelley, who tracked Jeremy's phone so that police could locate him.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

22.     While attempting to locate Jeremy, Defendant Sean Kelley spoke on multiple instances with Defendant Wallace along with other Grand Valley State police officers.

**ANSWER:     The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

23.     After getting out of the hospital following his October 5 suicide threat, Jeremy began stalking and harassing Rosemarie.

**ANSWER:     The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

24.     Upon information and belief, Jeremy contacted Rosemarie repeatedly on October 7, 2016, and his statements to her made her believe that he was going to try and attempt suicide again.

**ANSWER:     The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

25.     In part to avoid Jeremy's constant harassment after his suicide attempt, Rosemarie stayed at the apartment of her friend, Shelby Gird, and also at the house of her aunt and uncle, Noreen and David Rose.

**ANSWER:     The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

26.     Upon information and belief, on or about the early morning of October 8, 2017, Jeremy attempted to locate Rosemarie by calling Pam pretending to be Jeremy's boss, "Chad," and telling Pam that Jeremy had been taken to the hospital and that he needed Shelby's phone number so he could contact Rosemarie to obtain medical information for Jeremy.

**ANSWER:     The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

27.     These statements were lies and disturbing to Rosemarie.

**ANSWER:     The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

28.     On or about October 8, 2016, Rosemarie met her mother, Pam, for a late lunch, Pam observed that Rosemarie had a crooked nose and facial bruises, and Pam took Rosemarie to the hospital for treatment, where it was determined that she had suffered a broken nose.

**ANSWER:   The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

29.     At approximately 5:00 p.m. on or about October 8, 2016, Jeremy admitted to Pam during a phone conversation that he had hurt Rosemarie.

**ANSWER:   The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

30.     After leaving the hospital on October 8, 2016, Rosemarie called her father, John, and told him that during an argument with Jeremy, after he physically prevented her from leaving, Jeremy punched her in the face, arms, and legs several times, causing her broken nose among other injuries.

**ANSWER:   The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

31.     From October 8, 2016 through October 11, 2016, Jeremy called Rosemarie approximately forty three (43) times.

**ANSWER:   The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

32.     On or about October 11, 2016, Jeremy went to the house of Rosemarie's aunt and uncle, Noreen and David Rose, asking to see Rosemarie repeatedly, but was told she was not there.

**ANSWER:   The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

33.     After failing to locate Rosemarie on October 11, Jeremy called David Rose at approximately 11:10 p.m. and again threatened to kill himself, stating that he had a gun to his head.

**ANSWER:   The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

34.     After being told by Jeremy that he was holding a gun to his head, David called 911 and, upon information and belief, reported Jeremy's actions to Defendant Ottawa County Sheriff's Department.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

35.    Upon information and belief, an officer from Defendant Ottawa County Sheriff's Department acting on David's report that Jeremy threatened suicide contacted Jeremy by telephone, but the police took no further action regarding Jeremy's suicide attempt threat.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

36.    After the October 11 suicide threat, Jeremy continued stalking Rosemarie.  On or about October 12, 2016, Jeremy came to Grand Valley State University's campus, where Rosemarie was a student, and jumped in front of Rosemarie's car before pounding on the window and head-butting her vehicle.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

37.    On or about October 12, 2016, Rosemarie contacted GVSU's Police Department and reported Jeremy for stalking, domestic violence/abuse, and for putting a gun to her head and threatening to kill her.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

38.    Rosemarie made her report to Defendant Wallace of the GVSU Police Department, who then contacted Defendant Ottawa County Sheriff's Department, who dispatched Defendant Dill to the GVSU campus to give Rosemarie paperwork required for filing a Personal Protection Order ("PPO").

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

39.    Defendant Dill encouraged Rosemarie to file the PPO.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

40.    Defendant Wallace completed a "no trespassing" form for Jeremy along with creating an incident report based on stalking arising from the circumstances Rosemarie told him about; he also affirmatively suggested Rosemarie file a PPO against Jeremy.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

41.     Upon information and belief, on or about October 13, 2016, Defendant Tubergen of the OCSD visited Jeremy at Jeremy's home and told Jeremy to leave Rosemarie alone.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

42.     He did this based on Rosemarie's desire to file the PPO.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

43.     Sometime after he visited Jeremy on October 13, 2016, Officer Tubergen called Pam and told her that there was nothing that could be done to prevent Jeremy from calling Rosemarie, that he had seen Jeremy's guns and that Jeremy was legally allowed to own those guns, and that he was "well aware" that Jeremy's father, Sean Kelley, was a police officer.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

44.     At all times material and relevant, Jeremy's father, Sean Kelley, was a Patrol Officer with the Bloomfield Township Police Department in Bloomfield Township, Michigan.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

45.     During the October 13, 2016, telephone conversation, Pam told Defendant Tubergen that Jeremy had held a gun to Rosemarie's head and threatened to kill her with it.  In response, Officer Tubergen told Pam that Rosemarie needed to file a report.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

46.     Upon information and belief, in response to Officer Tubergen's direction, on or about October 13, 2016, Rosemarie reported that Jeremy held a gun to her head and threatened to kill her to Defendant Chris Dill.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

47.   Also on October 13, 2016, Defendant Dill informed Jeremy over the telephone that he was not going to take Jeremy to jail despite his desire to question him regarding Rosemarie's complaint of domestic violence.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

48.   In the same telephone conversation with Jeremy, Jeremy informed Defendant Dill that he was upset Rosemarie called the police and he believed she had obtained a PPO at that time.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

49.   Defendant DeHaan reviewed both Defendant Wallace's and Dill's reports on October 13.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

50.   Pam also called and spoke with Defendant DeHaan on October 13, 2016, wherein she informed him about Jeremy's stalking behavior, that Jeremy had several guns and was very unpredictable, and that she was concerned about Jeremy's father, Defendant Kelley, offering Jeremy bad advice regarding the situation with Rosemarie.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

51.   Defendant DeHaan informed Pam that he would follow up on the incident.

**ANSWER:** **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

52.   Defendant DeHaan spoke to Jeremy on the morning of October 13, 2016.  During this phone conversation, he informed Jeremy he was inquiring into a report made about him by Rosemarie.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

53.    Defendant DeHaan also told Jeremy that because of his earlier actions he was banned from GVSU property, was not allowed on [*sic*] to enter any GVSU property, and not to contact any of the Reilly family members by phone, e-mail or any other electronic means as they do not wish to contact him.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

54.    On or about October 16, 2016, Pam Reilly spoke with Defendant Luce about the need to retrieve Rosemarie's belongings from Jeremy's residence and expressed concerns about Jeremy's possession of firearms, which she informed Defendant Luce Jeremy had previously threatened to kill Rosemarie with.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

55.    Upon information and belief, at the time of this October 16 phone conversation, Sgt. Luce knew that Jeremy's dad was a West Bloomfield police officer, had spoken to him, and stated that Jeremy was allowed to have guns and that there was no cause to remove them.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

56.    Pam called and spoke to the Ottawa County Sheriff's Department that day and asked them to meet Rosemarie and herself at Jeremy's trailer to retrieve her belongings.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

57.    Upon information and belief, Jeremy's father, Defendant Kelley, had spoken with officer(s) from Defendant OCSD prior to this encounter and on behalf of his son.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

58.    Upon arriving at Jeremy's trailer, Jeremy and an officer from Defendant OCSD were cordially standing in the parking lot waiting.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

59.     The officer initially was not going to supervise Rosemarie's removal of her things inside the trailer, was going to permit Jeremy and Rosemarie to be alone while she removed her things, and only did so upon request of the Reilly's [*sic*].

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

60.     On or about October 17, 2016, Rosemarie paid for the PPO and picked it up from the Kent County courthouse, signed by Judge Daniel Zemaitis.  The PPO ordered that Jeremy was prohibited from, among other conduct: entering Rosemarie's residence, entering onto GVSU property, following Rosemarie, and contacting Rosemarie by phone or Facebook.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

61.     On or about October 18, 2016, Jeremy called Rosemarie three times despite Rosemarie attempting to block Jeremy's phone.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

62.     On or about October 19, 2016, Rosemarie contacted the GVSU police and reported to Defendant Wallace that Jeremy continued to call her and stalk her by entering onto the GVSU campus and following Rosemarie with his vehicle until she ran into a dining hall, where she called the police from.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

63.     On multiple instances Pam called the GVSU police expressing fear for both her daughters, specifically Rosemarie, as her other daughter Jennifer was with Rosemarie at the time.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

64.     Upon information and belief, officers from the GVSU Police Department went to Rosemarie's sister, Jennifer Reilly's, dorm room to check on Rosemarie after Pam Reilly called the GVSU police to tell them that Jeremy was violating the PPO.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

65.    Despite Jeremy's continued stalking of Rosemarie and Rosemarie's reports, no one attempted to arrest Jeremy.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

66.    Upon information and belief, during a telephone conversation that occurred on or about October 20, 2016, Jeremy's father, Defendant Sean Kelley, told Pam that Rosemarie was a liar and that they (Pam and John) needed to stop calling the police on Jeremy.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

67.    Upon information and belief, sometime during the last week of October 2016, Jeremy told Rosemarie and Jennifer Reilly that Jeremy's dad, Defendant Sean Kelley, had spoken to the local police and that "nothing was going to happen" to Jeremy for violating the PPO.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

68.    Rosemarie emailed Defendant Wallace on or around October 22, 2016, to which she explained that since they had last spoken when she informed him she obtained the PPO, Jeremy had tried to contact her 86 times through her phone, left her multiple voicemails, and emailed her University email address on multiple instances.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

69.    A warrant was prepared by Defendant OCSD for Jeremy's arrest on October 28, 2016, arising out of Rosemarie's report of domestic violence.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

70.    Pursuant to Defendant OCSD's policies, this warrant was mailed to Jeremy's residence.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

71.     Upon information and belief, Defendant Wallace mailed Jeremy a different warrant for his arrest on or around November 2, 2016, arising out of Rosemarie's complaint of his stalking to GVSU PD.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

72.     On or about November 4, 2016, Pam Reilly accompanied Rosemarie to a Grand Rapids garage to retrieve some of Rosemarie's personal belongings that were stored there.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

73.     While at the garage, Pam called 911 after believing she saw Jeremy and asked the police to send an officer out while Rosemarie removed her belongings from the garage.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

74.     The police refused to come to the garage, and because the garage manager would not unlock the garage without Jeremy being present, Pam and Rosemarie left.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

75.     The following day, on or about November 5, 2016, Jeremy spoke with John Reilly on the telephone and told John that he was with his step brother, Ryan Claffy, in Muskegon and would not be able to come open the garage.  Jeremy further stated that he was aware that he had warrants out for his arrest, and John encouraged Jeremy to turn himself in and cooperate with the police.

**ANSWER:    The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

76.     Upon information and belief, either Jeremy's father or one of the Defendant police officers in the area also informed Jeremy he had a warrant for his arrest relating to the domestic violence incident but did not effectuate his arrest.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

77.   Upon information and belief, on or about November 6, 2016, Jeremy found Rosemarie at a friend's house located at 1450 Lake Dr. SE, Grand Rapids, MI 49605 [*sic*], and, at approximately 3:00 a.m., dragged Rosemarie from the residence by her hair, shot her multiple times in the torso with a black 9 mm Beretta pistol when she attempted to flee back into the house, then shot himself in the head.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

78.   Rosemarie, whose condition was noted by police as indicating that she had been involved in a struggle, was pronounced dead at the scene at approximately 3:22 a.m.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

79.   Jeremy, who upon information and belief was not deceased when police arrived, was transported to St. Mary's Hospital and was later pronounced dead from his injuries at approximately 3:42 a.m.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

80.   Upon information and belief, Defendants knew that Jeremy had a handgun in his possession yet permitted him to continue to possess the handgun despite continual knowledge of his prior threats of shooting Rosemarie.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

81.   Defendants knew of Jeremy's propensity for violence yet did nothing to protect Rosemarie Reilly.

**ANSWER:**   **Denied as factually untrue.**

82.   The risk that Jeremy Kelley was out of control and dangerous to Rosemarie Reilly was obvious and known by Defendants.

**ANSWER:**   **Denied as factually untrue.**

83. Upon information and belief, it was told or communicated to local police that "nothing was going to happen" to Jeremy Kelley for violating his personal protection order.

**ANSWER:**   **Denied as factually untrue.**

84. Upon information and belief, local police, including the individually named Defendant officers, listened and acquiesced to Jeremy's father when he requested leniency for his son.

**ANSWER:**   **Denied as factually untrue.**

85. In the month preceding Rosemarie's death, Defendants put Jeremy on notice that he should stay away from Rosemarie (i.e. she made a police complaint about him), that Rosemarie filed a PPO against him, and that he had arrest warrant(s) out for his arrest relating to the stalking and the domestic violence charge.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

86. Defendants encouraged Rosemarie to file the PPO.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

87. Jeremy's father's communications with the Defendant Officers, and the Officers, and the Officers' ensuing refusal to arrest and/or remove his guns, boldened Jeremy's belief that "nothing was going to happen" him [*sic*], which in turn led to Rosemarie's death.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

88. Defendants' regular communication with Jeremy, especially but not limited to after he continually violated the signed PPO, boldened his belief that "nothing was going to happen" him [*sic*], which in turn led to Rosemarie's death.

**ANSWER:**   **The Ottawa County Defendants neither admit nor deny due to a lack of information regarding the allegations.**

89. The Defendants used apparent authority and refrained from arresting Jeremy Kelley for violating his protection order on four (4) separate occasions.

**ANSWER:**   **Denied as factually untrue.**

90.     The Defendants [*sic*] actions constitute an affirmative act that either created the risk or increased the risk of danger to Rosemarie Reilly placing her in substantial risk of serious immediate and proximate harm which was the cause of her death.

**ANSWER:     Denied as factually untrue.**

91.     The Defendants [*sic*] affirmative actions are outrageous and shock the conscience.

**ANSWER:     Denied as factually untrue.**

<u>COUNT I</u>
<u>FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983 AS TO</u>
<u>ALL/INIVIDUAL DEFENDANTS</u>

92.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 91, as if fully set forth herein.

**ANSWER:     The Ottawa County Defendants reallege and reassert their answers to the allegations in paragraphs 1 through 91 of the First Amended Complaint as if fully set forth herein.**

93.     This action is brought pursuant to 42 U.S.C. § 1983 against Defendants in their individual capacities for depriving Plaintiff of her constitutionally protected due process interest, under color of law, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:     The Ottawa County Defendants neither admit nor deny the allegations of this paragraph because they are legal conclusions to which no responsive pleading is due.**

94.     Plaintiff's decedent had a clearly established right, under the Fourteenth Amendment to the United States Constitution, to be free from danger created by the state.

**ANSWER:     Denied as legally and factually untrue.**

95.     The acts and/or omissions of Defendants, constituted deliberate indifference to Plaintiff's right, in violation of the Fourteenth Amendment.

**ANSWER:     Denied as legally and factually untrue.**

96.     These claims are cognizable under 42 U.S.C. § 1983.

**ANSWER:     Denied as legally and factually untrue.**

97.     As a result of Defendants' conduct complained of herein, Plaintiff suffered deprivation of clearly established and well-settled rights protected and secured by the Fourteenth Amendment to the United States Constitution.

**ANSWER:**     **Denied as legally and factually untrue.**

98.     Defendants, individually, were deliberately indifferent to Plaintiff's decedent, which was a proximate cause of her death and conscious suffering.

**ANSWER:**     **Denied as legally and factually untrue.**

99.     Defendants are not entitled to governmental or qualified immunity.

**ANSWER:**     **Denied as legally and factually untrue.**

100.     Pursuant to 42 U.S.C. § 1983, Defendants are liable to Plaintiff for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies. Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

**ANSWER:**     **Denied as legally and factually untrue.**

101.     As a result of the Defendants' actions and/or omissions, Plaintiff has the following damages:

      a.     Special damages in the form of medical, funeral, and burial expenses;

      b.     Compensatory damages;

      c.     Conscious pain and suffering;

      d.     Loss of companionship;

      e.     Punitive damages;

      f.     All damages allowable under Michigan law, including but not limited to the Michigan Wrongful Death Act, M.C.L. § 600.2922;

      g.     All damages allowable under Federal law, including but not limited to 42 U.S.C. § 1983; and

      h.     Reasonable costs and attorney's fees under 42 U.S.C. §1988.

**ANSWER:**     **Denied as legally and factually untrue.**

WHEREFORE, the Ottawa County Defendants respectfully request that the First Amended Complaint be dismissed with prejudice and without recovery of any relief whatsoever and that they be awarded such further legal and equitable relief as appropriate, including, but not limited to, costs and attorneys' fees.

### COUNT II
### MUNICIPAL LIABILITY AS TO DEFENDANT OTTAWA COUNTY

102.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 101, as if fully set forth herein.

**ANSWER:     The Ottawa County Defendants reallege and reassert their answers to the allegations in paragraphs 1 through 101 of the First Amended Complaint as if fully set forth herein.**

103.     Defendant Ottawa County's liability as a municipality arises out of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**ANSWER:     The Ottawa County Defendants neither admit nor deny the allegations of this paragraph because they are legal conclusions to which no responsive pleading is due.**

104.     Defendant Ottawa County through their policy making officials:

   a.     Failed to establish, implement, and/or execute adequate policies, procedures, rules and regulations to protect individuals, such as Rosemarie Reilly, from individuals with violent tendencies or who had PPOs against them;

   b.     Failed to establish, implement, and/or execute adequate policies, procedures, rules and regulations to protect individuals, such as Rosemarie Reilly, from individuals against whom arrest warrants had been issued.

   c.     Defendant's policy, procedures, regulations, and customs, and/or its failure to enact the same, caused and was the driving force behind the violations of Plaintiff's constitutional rights as alleged in this Complaint.

   d.     Failing to properly train its employees, including the above-named Defendant.

   e.     Failed to establish, implement, and/or execute adequate policies, procedures, rules and regulations that ensured officers from different police

departments—Defendant Kelley—could improperly influence investigations and/or police conduct.

**ANSWER:**   **Denied as legally and factually untrue.**

105.   At all times material hereto, Defendant Ottawa County, through its agents, was deliberately indifferent to the strong likelihood that constitutional violations, such as those in the instant case, would occur, and pursued policies, practices, and customs that were a direct and proximate cause of the deprivations of Plaintiff's decedent's constitutional rights.

**ANSWER:**   **Denied as legally and factually untrue.**

106.   These claims are cognizable under 42. U.S.C. § 1983.

**ANSWER:**   **Denied as legally and factually untrue.**

107.   The customs, policies and/or practices of Defendant Ottawa County were a proximate cause of the death and conscious suffering of Plaintiff's decedent for the aforementioned reasons.

**ANSWER:**   **Denied as legally and factually untrue.**

108.   As a result of the Defendants' actions and/or omissions, Plaintiff has the following damages:

  a.   Special damages in the form of medical, funeral, and burial expenses;

  b.   Compensatory damages;

  c.   Conscious pain and suffering;

  d.   Loss of companionship;

  e.   Punitive damages;

  f.   All damages allowable under Michigan law, including but not limited to the Michigan Wrongful Death Act, M.C.L. § 600.2922;

  g.   All damages allowable under Federal law, including but not limited to 42 U.S.C. § 1983; and

  h.   Reasonable costs and attorney's fees under 42 U.S.C. § 1988.

**ANSWER:**   **Denied as legally and factually untrue.**

WHEREFORE, the Ottawa County Defendants respectfully request that the First Amended

Complaint be dismissed with prejudice and without recovery of any relief whatsoever and that

they be awarded such further legal and equitable relief as appropriate, including, but not limited to, costs and attorneys' fees.

## <u>COUNT III</u>
### <u>WRONGFL DEATH AS TO DEFENDANTS TUBERGEN, DILL, LUCE, WALLACE, DEHAAN, AND KELLEY</u>

109.    Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 108, as if fully set forth herein.

**<u>ANSWER</u>:     The Ottawa County Defendants reallege and reassert their answers to the allegations in paragraphs 1 through 108 of the First Amended Complaint as if fully set forth herein.**

110.    Plaintiff's decedent suffered injuries resulting in death caused by Defendants' wrongful conduct, and if death had not ensued, Plaintiff's decedent would have been entitled to maintain an action and recover damages.  MCL § 600.2922.

**<u>ANSWER</u>:     Denied as legally and factually untrue.**

111.    The Defendants' aforementioned acts and/or omissions were a proximate cause of Plaintiff's decedent's death.

**<u>ANSWER</u>:     Denied as legally and factually untrue.**

112.    The acts and/or omissions of Defendants Eric Tubergen, Chris Dill, Dennis Luce, Collin Wallace, Brandon DeHaan and Sean Kelley constituted gross negligence under state law.

**<u>ANSWER</u>:     Denied as legally and factually untrue.**

113.    The acts and/or omissions of Defendants Eric Tubergen, Chris Dill, Dennis Luce, Collin Wallace, Brandon DeHaan and Sean Kelley were intentional, wanton and willful, and/or grossly negligent and Defendants are therefore not entitled to governmental immunity under state law, MCL § 691.1407.

**<u>ANSWER</u>:     Denied as legally and factually untrue.**

114.    Defendants' gross negligence was a proximate cause of the injuries, including the death of Plaintiff's decedent.

**<u>ANSWER</u>:     Denied as legally and factually untrue.**

115.    As a result of the Defendants' actions and/or omissions, Plaintiff has the following damages:

a.   Special damages in the form of medical, funeral, and burial expenses;

b.   Compensatory damages;

c.   Conscious pain and suffering;

d.   Loss of companionship;

e.   Punitive damages;

f.   All damages allowable under Michigan law, including but not limited to the Michigan Wrongful Death Act, M.C.L. § 600.2922;

g.   All damages allowable under Federal law, including but not limited to 42 U..S.C. § 1983; and

h.   Reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

**ANSWER:**   **Denied as legally and factually untrue.**

WHEREFORE, the Ottawa County Defendants respectfully request that the First Amended Complaint be dismissed with prejudice and without recovery of any relief whatsoever and that they be awarded such further legal and equitable relief as appropriate, including, but not limited to, costs and attorneys' fees.

## COUNT IV
## CIVIL CONSPIRACY AS TO DEFENDANTS TUBERGEN, DILL, LUCE, WALLACE, DEHAAN, AND KELLEY

116.   Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 115, as if fully set forth herein.

**ANSWER:**   **The Ottawa County Defendants reallege and reassert their answers to the allegations in paragraphs 1 through 115 of the First Amended Complaint as if fully set forth herein.**

117.   Defendants Tubergon [*sic*], Dill, Luce, Wallace, Dehaan [*sic*], and Kelley violated Plaintiff's decedent's civil rights as identified herein, including by:

a.   Allowing Jeremy Kelley to remain out of police custody despite numerous violations of a PPO and despite Defendants' knowledge that Jeremy Kelley possessed firearms;

      b.      Waiting to arrest Jeremy Kelley pursuant to an arrest warrant for domestic violence and mailing said warrant to Jeremy Kelley's residence;

      c.      Speaking with Jeremy Kelley's father, Defendant Kelley, and listening to his efforts regarding leniency for his son;

      d.      Other violations of Plaintiff's decedent's civil rights learned through the course of discovery.

**ANSWER:**    **Denied as legally and factually untrue.**

118.    Upon information and belief, Defendants violated Plaintiff's decedent's civil rights pursuant to an agreement with or in concert with Defendant Sean Kelley.

**ANSWER:**    **Denied as legally and factually untrue.**

119.    Defendants were acting within the course and scope of their employment as police officers when they conspired with Defendant Kelley.

**ANSWER:**    **Denied as legally and factually untrue.**

120.    As a result of the Defendants' actions and/or omissions, Plaintiff has the following damages:

      a.      Special damages in the form of medical, funeral, and burial expenses;

      b.      Compensatory damages;

      c.      Conscious pain and suffering;

      d.      Loss of companionship;

      e.      Punitive damages;

      f.      All damages allowable under Michigan law, including but not limited to the Michigan Wrongful Death Act, M.C.L. § 600.2922;

      g.      All damages allowable under Federal law, including but not limited to 42 U.S.C. § 1983; and

      h.      Reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

**ANSWER:**    **Denied as legally and factually untrue.**

WHEREFORE, the Ottawa County Defendants respectfully request that the First Amended

Complaint be dismissed with prejudice and without recovery of any relief whatsoever and that

they be awarded such further legal and equitable relief as appropriate, including, but not limited to, costs and attorneys' fees.

SILVER & VAN ESSEN, P.C.
Attorneys for Defendants Ottawa County, Tubergen, Dill, and Luce

Date: November 6, 2018                    By: /s/ Douglas W. Van Essen
                                          Douglas W. Van Essen (P33169)
                                          Lee T. Silver (P36905)
                                          Michael L. Gutierrez (P79440)

BUSINESS ADDRESS AND TELEPHONE:
300 Ottawa Avenue, NW, Suite 620
Grand Rapids, MI 49503
(616) 988-5600
dwv@silvervanessen.com
ltsilver@silvervanessen.com
mgutierrez@silvervanessen.com

## AFFIRMATIVE DEFENSES

The Ottawa County Defendants, by and through their attorneys aforesaid, incorporate by reference their answers to the Complaint as if fully set forth herein and state the following as their affirmative defenses:

1.      Plaintiff has failed to state a claim upon which relief can be granted.

2.      Plaintiff's decedent failed to mitigate her alleged damages.

3.      Plaintiff's claims are barred in whole or in part by Rosemarie Reilly's contributory and/or comparative negligence or intentional acts, including, to but not limited to, the fact that she chose to date Jeremy Kelley, continue living with Jeremy Kelley after they broke up, and did not leave the area when she knew she was in physical danger.

4.      Plaintiff's claims are barred in whole or in part by her own contributory and/or comparative negligence, including, to but not limited to, the fact she failed to remove the decedent from the area when she perceived that Rosemary Reilly was in physical danger

5.      Plaintiff's claims are barred in whole or in part by the doctrine of laches, estoppel, or unclean hands.

6.      Plaintiff has failed to add necessary parties.

7.      Plaintiff's claims are barred by the applicable statute of limitations.

8.      The Ottawa County Defendants are entitled to attorneys' fees pursuant to 42 U.S.C. § 1988.

9.      In addition to the facts above, Plaintiff's claims are barred in whole or in part by the doctrines of governmental, municipal, qualified, good faith, and/or officer immunity.

10.     Some or all of the claims may be barred by the Heck doctrine.

11.     Some or all of the claims may be barred by Plaintiff's failure to follow administrative remedies.

12.     The doctrine of *respondeat superior* has no applicability to the claims and, therefore, the absence of that doctrine may bar some or all of the claims.

13.     The actions of the Ottawa County Defendants did not violate Rosemarie Reilly's constitutional rights, nor were they deliberately indifferent nor occurred with evil intent or reckless disregard.

14.     Some or all of the claims may be barred by collateral estoppel.

15.     The Ottawa County Defendants reserve the right to add additional defenses as they become known through discovery.

WHEREFORE, the Ottawa County Defendants request that this Court deny Plaintiff any relief pursuant to the Complaint, that the Complaint be dismissed with prejudice, and that they be granted such further relief as this Court deems appropriate, including but not limited to, costs and attorneys' fees.

SILVER & VAN ESSEN, P.C.
Attorneys for Defendants Ottawa County,
Tubergen, Dill, and Luce

Date: November 6, 2018                    By: /s/ Douglas W. Van Essen
                                              Douglas W. Van Essen (P33169)
                                              Lee T. Silver (P36905)
                                              Michael L. Gutierrez (P79440)

                                          BUSINESS ADDRESS AND TELEPHONE:
                                              300 Ottawa Avenue, NW, Suite 620
                                              Grand Rapids, MI 49503
                                              (616) 988-5600
                                              dwv@silvervanessen.com
                                              ltsilver@silvervanessen.com
                                              mgutierrez@silvervanessen.com

## DEMAND FOR JURY TRIAL

By and through their attorneys, SILVER & VAN ESSEN, P.C., each and every Ottawa

County Defendant hereby demands a trial by jury on all issues in this case that are triable to a jury.

SILVER & VAN ESSEN, P.C.
Attorneys for Defendants Ottawa County,
Tubergen, Dill, and Luce

Date: November 6, 2018                    By: /s/ Douglas W. Van Essen
                                              Douglas W. Van Essen (P33169)
                                              Lee T. Silver (P36905)
                                              Michael L. Gutierrez (P79440)

                                          BUSINESS ADDRESS AND TELEPHONE:
                                              300 Ottawa Avenue, NW, Suite 620
                                              Grand Rapids, MI 49503
                                              (616) 988-5600
                                              dwv@silvervanessen.com
                                              ltsilver@silvervanessen.com
                                              mgutierrez@silvervanessen.com